IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAMI L. PIERCE, | ) | CASE NO. 3:13 CV 1744 |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

This is an action by Kami L. Pierce under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[1] The Commissioner has answered[2] and filed the transcript of the administrative record.[3] Under my initial[4] and

---

[1] ECF # 1.

[2] ECF # 12.

[3] ECF # 13.

[4] ECF # 6.

procedural[5] orders, the parties have briefed their positions[6] and filed supplemental charts[7] and the fact sheet.[8] Although a telephonic oral argument had been scheduled for June 4, 2014,[9] on motion of the Commissioner,[10] it was continued.[11] After review of the file, it was determined that the case would be decided without oral argument.

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Pierce, who was 26 years old at the time of the decision here,[12] has a high school education[13] and was found to have no past relevant work experience,[14] although she has some history of unskilled and semiskilled employment prior to 2005.[15] She testified that she is the

---

[5] ECF # 14.

[6] ECF # 19 (Pierce's brief); ECF # 20 (Commissioner's brief); ECF # 21 (Pierce's reply brief).

[7] ECF # 18 at 3-17 (Pierce's charts); ECF # 20-1 (Commissioner's charts).

[8] ECF # 18 at 1-2 (Pierce's fact sheet).

[9] ECF # 17.

[10] ECF # 22.

[11] ECF # 23.

[12] Transcript ("Tr.") at 26.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 172, 174, 539.

sole caretaker of her three-year-old son and has lived alone with him in a mobile home for at least the two years prior to the hearing.[16]

The ALJ, whose decision became the final decision of the Commissioner, found that Pierce had the following severe impairments: status post laminectomy and fusion with residual pain; lumbago; bipolar disorder; and history of attention deficit hyperactive disorder (ADHD).[17]

After concluding that the relevant impairments did not meet or equal a listing, with particular attention to the listings for disorders of the spine and mental impairments,[18] the ALJ made the following finding regarding Pierce's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the individual is limited to simple, repetitive, routine tasks.[19]

As noted, the ALJ found that Pierce had no past relevant work, and so concluded that transferability of job skills was not an issue.[20]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[16] *Id.* at 22.

[17] *Id.* at 20.

[18] *Id.* at 20-22.

[19] *Id.* at 22.

[20] *Id.* at 26.

-3-

determined that a significant number of jobs existed locally and nationally that Pierce could perform.[21] The ALJ, therefore, found Pierce not under a disability.[22]

## C.     Issues on judicial review and decision

Pierce asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Pierce presents the following issues for judicial review:

- Did the ALJ fail to provide due process to the plaintiff by failing to allow full and fair cross examination of the VE and disallowing plaintiff's mother to testify rendering the decision not based on substantial evidence?[23]

- Did the ALJ fail to properly account for plaintiff's borderline intellectual functioning; actual functional educational level in Findings No. 3, 5, and 8, thereby proffering an inaccurate hypothetical to the VE resulting in testimony which defendant cannot rely upon as substantial evidence to support denial of benefits?[24]

For the reasons that follow, I will recommend that the ALJ's finding of no disability is supported by substantial evidence and, therefore, should be affirmed.

---

[21] *Id.* at 26-27.

[22] *Id.* at 27.

[23] ECF # 19 at 2.

[24] *Id.* at 2-3.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[26]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[27]

---

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.  The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.** ***Limitations necessitated by a finding of moderate difficulties with concentration, persistence, or pace***

Where an ALJ determines that the claimant has moderate difficulties in concentration, persistence, or pace, the ALJ must then account for them in the RFC finding.[28] The Sixth Circuit's decision in *Ealy v. Commissioner of Social Security*[29] provides the foundation for this requirement.

In *Ealy* the ALJ credited the opinion of the state agency reviewing psychologist that the claimant retained the ability to "sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical."[30] The hypothetical to the vocational expert incorporated no reference to the two-hour limitation or to speed not being critical.[31] Rather it merely contained a limitation to simple repetitive tasks,[32] as did the residual functional capacity finding.[33] Based on the vocational expert's response to the

---

[28] *Williams v. Comm'r of Soc. Sec.*, No. 1:12CV358, 2013 WL 2319276, at *4 (N.D. Ohio May 28, 2013).

[29] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

[30] *Id.* at 509.

[31] *Id.* at 510.

[32] *Id.*

[33] *Id.* at 511.

hypothetical, the ALJ found that a significant number of jobs existed and Ealy not disabled.[34] The district court affirmed the agency's decision.[35]

On appeal the Sixth Circuit approved the ALJ's crediting of the state agency reviewing psychologist's opinion and the limitations therein.[36] It took issue, however, with the ALJ's failure to incorporate into the hypothetical to the expert the two-hour limitation to sustain attention to complete simple repetitive tasks and the proviso that speed not be critical.[37]

The court noted that the reviewing psychologist had opined moderate limitations in Ealy's abilities to maintain attention and concentration for extended periods, to complete a normal workday and workweek[38] without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.[39] The ALJ concluded that Ealy had moderate difficulties with regard to concentration, persistence, or pace.[40] In finding the hypothetical to the expert deficient, the court cited approvingly cases stating the proposition that hypothetical limitations to "simple,

---

[34] *Id.*

[35] *Id.* at 511-12.

[36] *Id.* at 514-15.

[37] *Id.* at 516.

[38] *Id.* at 516 n.4.

[39] *Id.*

[40] *Id.*

routine, unskilled work" do not sufficiently address moderate deficiencies in concentration, persistence, or pace.[41]

In several cases post-*Ealy*, this Court seemingly adopted the rule that where the ALJ finds the claimant moderately deficient in concentration, persistence, or pace, a limitation to simple repetitive tasks in the hypothetical to the vocational expert does not adequately address those deficiencies.[42]

But several other post-*Ealy* decisions of this Court decline to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, or pace where he or she has significant difficulty responding appropriately to stress or pressure in the workplace or adapting to changes in the work environment.[43] The Court in *Jackson* stated that moderate difficulties in concentration, persistence, or pace must be coupled with a finding of additional "speed- and pace-based restrictions" to make simple repetitive tasks an inadequate limitation in the RFC and hypothetical to the expert.[44]

---

[41] *Id.* at 516-17, citing *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005), and *Whack v. Astrue*, No. 06-4917, 2008 WL 509210, at *8 (E.D. Pa. Feb. 26, 2008).

[42] *Candela v. Astrue*, No. 1:10CV1603, 2011 WL 3205726, at *10-11 (N.D. Ohio July 28, 2011); *Johnson v. Astrue*, No. 1:09CV2959, 2010 WL 5559542, at *8 (N.D. Ohio Dec. 3, 2010).

[43] *Steed v. Astrue*, No. 4:11CV204, 2012 WL 1097003, at *9 (N.D. Ohio Mar. 30, 2012); *Jackson v. Comm'r of Soc Sec.*, No. 1:10CV763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011).

[44] *Jackson*, 2011 WL 4943966, at *4.

The law in this District on the proper application of *Ealy* remains somewhat fluid. This Court in *Makan v. Covlin*[45] cautioned that on certain facts even a limitation to simple, routine, and repetitive tasks coupled with limitation to a low stress work environment would not be sufficient where stress did not cause the claimant's difficulties with concentration, persistence, or pace.[46] The limitations adopted, therefore, must address the underlying source of the claimant's impairment.

## B.    Application of standards

### 1.    *Due Process and bias*

Pierce initially challenges the ALJ's decision on due process grounds, contending that the ALJ's questions to the claimant were cursory or misleading and that she improperly restricted Pierce's attorney in his presentation of the claimant's case.[47] While acknowledging that an ALJ has the discretion to limit cross-examination, Pierce argues that the ALJ here failed to give counsel a fair opportunity to cross-examine witnesses, and otherwise "clearly indicat[ed] that she had made up her mind."[48]

Essentially, with her first argument on appeal, Pierce advances two related but distinct claims concerning the ALJ's conduct at the hearing: first, that the ALJ failed to afford her a full and fair hearing, and second, that the ALJ was biased.

---

[45] *Makan v. Covlin*, No. 5:12 CV 31, 2013 WL 990824 (N.D. Ohio Mar. 7, 2013).

[46] *Id.*, at *2 n.1.

[47] ECF # 19 at 17-19.

[48] *Id.* at 19.

As to the due process claim, the Sixth Circuit stated in the case of *Lashley v. Secretary of Health and Human* Services[49] that "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge."[50] To satisfy this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."[51] However, the determination as to whether a claimant has received a full and fair hearing cannot be made according to a bright-line test but must be made on a case-by-case basis.[52] Moreover, an ALJ only bears a heightened duty to develop a full and fair record when the claimant is proceeding without representation.[53]

In addition, the Sixth Circuit stated in *Flatford v. Chater*[54] that "[d]ue process requires that a social security hearing be 'full and fair.'"[55] In that regard, a court must consider three factors in determining if a social security hearing meets the dictates of due process: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous

---

[49] *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983).

[50] *Id.* at 1051.

[51] *Id.* at 1052 (internal citations omitted).

[52] *Id.*

[53] *Id.* at 1051.

[54] *Flatford v. Chater*, 93 F.3d 1296 (6th Cir. 1996).

[55] *Id.* at 1305 (quoting *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971)).

-10-

deprivation of such interest by the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[56]

Here, Pierce complains that: (1) the ALJ "interrupted" the claimant, claimant's counsel, and the VE during their presentations; (2) propounded "less than open-ended" questions to the claimant; (3) did not permit the claimant's mother to testify at the hearing; and (4) only "reluctantly 'allowed counsel' to cross-examine and proffer a hypothetical to the VE."[57] Pierce also argues that, because the hearing was approximately 30 minutes in length, it was only the absolute minimum amount of time needed for the claimant to testify fully.[58]

It is beyond question that the ALJ, as the presiding officer at the administrative hearing, has the right to interrupt or question any participant in the hearing for clarification of their remarks.[59] In that same manner, due process is not offended by an ALJ attempting to help a claimant articulate her symptoms and limitations, particularly when the claimant

---

[56] *Id.* at 1306.

[57] ECF # 19 at 18-19.

[58] *Id.* at 17-18.

[59] *Hill v. Comm'r of Soc. Sec.*, No. 1:12-cv-235, 2013 WL 2896889, at *7 (W.D. Mich. June 13, 2013).

-11-

is also represented by counsel.[60] Nor is the mere fact that an ALJ may have been rude or curt or impolite or shown signs of annoyance or anger "'that are within the bounds of what imperfect men and women ... sometimes display,'" sufficient in itself to demonstrate prejudice or bias.[61]

Further, since Pierce was represented by counsel at the hearing, any purported defects in the manner that questions were formulated by the ALJ could have been immediately countered or corrected by claimant's counsel. Similarly, there is no due process violation in a claimed difficulty in cross-examination when the actual examination goes forward,[62] or when the length of the hearing is admitted to be sufficient but somehow is alleged to be just the necessary minimum.[63]

---

[60] *Miller v. Astrue*, No. 4:12-CV-4, 2012 WL 6737536, at *8 (E.D. Tenn. Dec. 5, 2012).

[61] *Hill*, 2013 WL 2896889, at *6 (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

[62] *Young v. Apfel*, 40 F. App'x 157, 163-64 (6th Cir. 2002).

[63] The hearing here was calculated by the claimant to be 30 minutes in length by the formula of one page of transcript equaling one minute of time. ECF # 19 at 17. The actual transcript of the hearing shows it began at 11:07 a.m. and concluded at 11:55 a.m. – or 48 minutes in length. *See*, Tr. at 535, 563. [Claimant in the reply brief finally states that the hearing was 47 minutes. ECF # 21 at 1.] Plainly, Pierce here sought to create an issue where the length of the hearing would be evidence of a lack of due process, relying on the Sixth Circuit's reasoning in *Lashley*, which criticized a hearing that lasted only 25 minutes, during which a 59-year-old claimant with a fifth grade education appeared without counsel. *Lashley*, 708 F.2d at 1050-52. In addition to the present hearing being more than twice as long as the one in *Lashley*, despite the attempt to frame it as being much shorter, Pierce graduated from high school, in contrast to the claimant in *Lashley* who only had a fifth-grade education, and most importantly Pierce was represented by counsel. Thus, notwithstanding an attempt to suggest or infer a parallel to *Lashley*, the present circumstances are demonstrably dissimilar.

-12-

As a final observation, a close reading of the entire transcript discloses that far from the ALJ being close-minded biased or brusque, the ALJ was actually complimented on the record by the claimant's attorney for being thorough. After first directly asking the claimant's attorney "are there any more medical records that we need to get,"[64] the claimant's attorney states that he wants to emphasize there are the reports concerning the claimant's poor task attention and anxiety issues.[65] The ALJ replied: "I've read them more than once."[66] After counsel summarized those reports, the following exchange occurred:

> ALJ: Okay. I read the record. Do you want to ask the Claimant any questions before I go to our vocational expert?
>
> ATTY: *You were pretty thorough.* Let me see.
>
> ALJ: Okay. Anything that I haven't covered?
>
> ATTY: That's why I'm looking.[67]

When the claimant's attorney then turned to examine the claimant, he began his short examination with a question arising from a point actually developed by the ALJ – a fact that was explicitly acknowledged by the claimant's attorney:

> ATTY (Q): I'm a little curious because the Judge points out a good thing ...[68]

---

[64] Tr. at 557.

[65] *Id.*

[66] *Id.*

[67] *Id.* at 558 (emphasis added).

[68] *Id.*

-13-

After concluding the brief (two questions) examination of the claimant, the attorney pronounced that he "ha[s] nothing for the Claimant," but informed the ALJ that "I do have her mother."[69] It is here that the ALJ makes the comment now alleged to be evidence of a lack of due process or bias: "Okay, no. That's not going to help me at all. Okay. I'm going to the vocational expert."[70]

As the prior excerpt from the transcript shows, the ALJ had read the record, and had been acknowledged to have been thorough in covering the relevant issues. Here, as the Commissioner observes,[71] the claimant's mother had completed an eight-page statement that was part of the record detailing information about the claimant's symptoms and daily activities.[72] With no contemporaneous objection by the claimant's attorney to the decision not to take additional evidence from the claimant's mother, the record strongly suggests that the decision – and the comment that additional testimony would not be helpful – is based on the fact that the ALJ had already read the statement in the record by the claimant's mother, and that additional testimony would be cumulative. Acting to preclude cumulative testimony is a well-accepted prerogative of a presiding officer at a hearing, and no violation of due process. Here, as in *Flatford*, "the record does not show that the administrative law judge

---

[69] *Id.* at 559.

[70] *Id.*

[71] ECF # 20 at 13.

[72] Tr. at 134-41.

-14-

abandoned his role as an impartial decision maker or failed in his duty to aid the claimant in a full development of the record."[73]

Indeed, while the preceding analysis has focused on the claim that the ALJ denied due process, the argument does not improve if it becomes an assertion that the ALJ was biased. Again, the transcript shows that the ALJ's closing of the hearing was not a sudden, abrupt action that "pulled the plug" on the claimant's attorney just as he was about to score a major point:

> REEXAMINATION OF CLAIMANT BY THE ADMINISTRATIVE LAW JUDGE
>
> Q: While you do that [the VE was looking up the appropriate reading, math and language level for one identified job], you don't have any trouble reading, do you Ms. Pierce? I mean, please —
>
> A. I do have a lot of trouble reading.
>
> Q. What exactly do you have trouble reading with?
>
> A. When I read it, I don't comprehend it.
>
> Q. Well, give me an example, an example of something you read but didn't comprehend.
>
> A. When I read, I don't get the, if I read, I don't remember what I've read. Like I don't comprehend it like say I read a book and somebody says well, what was it about. I can't tell them what it was about.
>
> ALJ: Okay. Go ahead Mr. Thompson [VE].
>
> VE: The folder position would have a reasoning level two, math level one, language level one again, the one level is grades one through three; the

---

[73] *Flatford*, 93 F.3d at 1307.

reasoning level two is four through six. And the sorter position has all three are at level one, so it would be at the lowest level of grades one through three.

ALJ: Okay. Okay, Counsel, I think we're done for today.

ATTY: Thank you, Your Honor.

ALJ: Okay. Thank you. We're going off the record.

(The hearing closed...)[74]

Again, it is curious that the claimant's counsel now contends that the ALJ in this exchange "did not let [him] ask further questions" of the VE, such as about production pace, or limits to periods of concentration, or need for repetition of instructions.[75] In fact, the record shows that claimant's counsel made absolutely no objection to the ALJ's decision to close the examination of the VE when she did. Rather, claimant's counsel thanked the ALJ. This is of significance because just prior to this exchange with the VE, the ALJ explicitly asked claimant's counsel "is there anything you want to add?" to the hypothetical in front of the VE, which was then followed by another invitation to claimant's counsel pose another hypothetical to the VE, or rephrase his previous inquiry.[76]

It is not credible to now assert that an ALJ who repeatedly – on the record – invited claimant's counsel to add to the discussion with the VE, to pose another hypothetical or to rephrase a prior inquiry, actually abruptly and prejudicially acted to shut off counsel from

---

[74] Tr. at 562-63.

[75] ECF # 21 at 2.

[76] Tr. at 560-61.

-16-

asking further questions, and to further assume that this Court should not also notice that claimant's counsel did not protest this action, but rather thanked the ALJ and made no further comment.

In summary, as to the due process argument, there has been no showing under the second inquiry of *Flatford* that any action by the ALJ put Pierce at risk of an erroneous decision. The claim of a denial of due process based on assertions of what counsel might have asked the VE or what the claimant's mother might have said beyond what was in her written report are, as the Sixth Circuit succinctly put it in *Young v. Apfel*, "mere speculation and strains the credulity of the Court."[77]

Further, the bias argument has revealed no evidence of bias or prejudice. ALJs are presumed to exercise their powers fairly, and the burden is on the party claiming bias to provide convincing evidence that some extrajudicial source apparent on the record resulted in an opinion based on something other than what the judge learned from his participation in the case.[78] The complete lack of any relevant evidence of bias, as defined in the applicable case authority, compels the conclusion here, as in *O'Neill v. Commissioner of Social Security*, that "[p]laintiff's veiled assertion that the ALJ's decision should be overturned because [s]he was somehow biased against plaintiff is utterly frivolous."[79]

---

[77] *Young*, 40 F. App'x at 164.

[78] *O'Neill v. Comm'r of Soc. Sec.*, No. 1:11-CV-1181, 2013 WL 1436648, at *7 (W.D. Mich. Apr. 9, 2013) (citations omitted).

[79] *Id.*

-17-

## 2.  *Borderline Intellectual Functioning ("BIF") and the hypothetical*

Pierce contends that by not including BIF as one of her severe impairments, the ALJ set in motion a cascade of errors that resulted in a flawed RFC being used to formulate a deficient hypothetical to the VE, the answer to which was the foundation for an incorrect decision.

The decision by the ALJ clearly cites to the principle evidence relied on by Pierce: 2005 testing that showed a verbal IQ of 77, a performance IQ of 79, and a full-scale IQ of 76; all of which, the decision states, place Pierce "in the borderline intellectual functioning."[80] Significantly, the ALJ also then noted that the administrator of the IQ test assigned Pierce a GAF score of between 50 and 55.[81] Similarly, the ALJ's decision further noted that Pierce received a GAF score of 50 in 2006 from a psychiatrist who performed a psychiatric evaluation.[82] The ALJ concluded, by citation to the Sixth Circuit case of *Smith v. Commissioner of Social Security*,[83] that "a GAF score of 45-50 is consistent with the ability to work."[84] The ALJ also assigned "some weight" to the opinion of a state agency reviewing psychologist's opinion that Pierce had only moderate limitations in the areas of concentration, persistence and pace, including specifically the ability to complete a normal

---

[80] Tr. at 24.

[81] *Id.*

[82] *Id.* at 24-25.

[83] *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).

[84] Tr. at 25.

-18-

workday and workweek, to perform at a reasonable pace and to respond appropriately to changes in the work setting.[85]

Neither Pierce nor the Commissioner discusses the ALJ's focus on the GAF score as a basis for determining that Pierce is capable of light work despite the acknowledged IQ scores in the BIF range. Pierce, for her part, argues either that the IQ scores alone should have resulted in BIF being named as a severe impairment and then as a limitation in the RFC or that the remarks by the ALJ about Pierce being "articulate," "able to care for her child" or a "high-school graduate" are insufficient personal opinions that cannot counter the IQ findings.[86] The Commissioner raises several evidentiary points, not made by the ALJ, that suggest that the IQ scores may not have been valid.[87]

As is well-established, the RFC is a statement of what the claimant can or cannot do, and is not a description of the maladies or illnesses a claimant has.[88] To that end, "a GAF score may be of considerable help to the ALJ in formulating the RFC," although it is not essential.[89] Thus, while a GAF score is only a subjective determination by a clinician of an individual's ability to function and is not determinative of whether a mental disorder is of sufficient severity to meet or equal a listing, "[n]evertheless, the Sixth Circuit has repeatedly

---

[85] *Id.* at 24, 26.

[86] ECF # 19 at 20-22.

[87] ECF # 20 at 15-17.

[88] *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).

[89] *Id.*

-19-

held that GAF scores in the mid 30's to mid 50's are consistent with the ability to perform simple, unskilled, low stress work."[90]

Here, while it is unclear whether Pierce's mental limitations actually were severe enough to be considered a severe impairment, the evidence directly cited by the ALJ of the multiple GAF scores between 50 and 55, together with the opinion of the state agency psychologist on moderate limitations in the areas of concentration, persistence, and pace, are substantial evidence in support of the RFC as formulated.

Moreover, the RFC's limitation to "light work" that is restricted to "simple, repetitive, routine tasks,"[91] was accurately conveyed to the VE in the hypothetical. Pierce's contention that an additional limitation as to speed of production[92] should have been included is not supported by the evidence or the case authority.

As I recently noted in *Salem v. Commissioner of Social Security*,[93] a review of cases construing the Sixth Circuit's holding in *Ealy*[94] establishes that:

> Consistent with *Ealy*, when an ALJ makes a finding of moderate difficulties with concentration, persistence, or pace, the RFC must contain some

---

[90] *Scheu v. Astrue*, No. 2:08-00081, 2010 WL 711813, at *5 (M.D. Tenn. Feb. 23, 2010) (citations omitted).

[91] Tr. at 22.

[92] ECF # 19 at 22-23.

[93] *Salem v. Comm'r of Soc. Sec.*, No. 1:12 CV 2345, 2014 WL 1304933 (N.D. Ohio Mar. 27, 2014).

[94] *Ealy*, 594 F.3d 504.

limitations to compensate for those difficulties. As held in *Jackson*,[95] where the ALJ makes of no findings supporting specific durational or pace-based limitations, the RFC need contain no more than a limitation to simple, repetitive, unskilled work. But if the ALJ makes additional findings as to duration or pace limitations, or the source reports relied on the by ALJ support such findings, the RFC must incorporate such additional limitations.[96]

Thus, in this case the ALJ, based on the opinion of the state agency psychologist and the multiple GAF scores, found that Pierce had only moderate difficulties with concentration, persistence, and pace. Further consistent with the opinion of the state agency psychologist, which was specifically set forth in the ALJ's decision and is discussed above, there were no additional, specific durational or pace-related limitations in either the state agency psychologist's opinion or in the RFC. Accordingly, without those additional limitations, the RFC need not contain any more than it did – a limitation to simple, repetitive, routine tasks in the context of light work.

Therefore, for the reasons stated, I recommend finding that there was no error in formulating the RFC in this case and so no subsequent error in using the RFC as the basis for the hypothetical question to the VE.

## Conclusion

For the reasons stated above, I recommend finding that substantial evidence supports the finding of the Commissioner that Pierce had no disability. Accordingly, I recommend that

---

[95] *Jackson*, 2011 WL 4943966, at *4.

[96] *Salem*, 2014 WL 1304933, at *3 (citations omitted).

-21-

the decision of the Commissioner denying Pierce disability insurance benefits and supplemental security income be affirmed.

Dated:   June 6, 2014                             s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[97]

---

[97] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-22-